Honorable Richard A. Jones

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

*Dallas Buyers Club, LLC*,

        Plaintiff

v.

*DOES 1-10*,

        Defendants.

Case No. 14-cv-1819-RAJ

*Amicus* Brief For Consideration In Awarding Default Judgment

Undersigned Counsel submits the following brief as *amicus* for consideration by the Court in fashioning a default judgment award against Defendant Eric Nydam. Undersigned counsel states that he does not represent Mr. Nydam nor has he ever knowingly spoken with him or anyone acting on his behalf. But in the interest of full disclosure, undersigned counsel does represent one Doe defendant who remains in this matter and Jeff Pleake was was voluntarily dismissed. Undersigned counsel also either represents or has represented numerous other Doe defendants in other, similar matters.

Undersigned counsel apologizes that the appended brief exceeds the five-page self-imposed limit by one page. However, the importance of these issues combined with the limited time resulted in a brief of six pages. Undersigned counsel hopes for the Court's understanding and indulgence.

*Amicus* Brief
Case No. 14-cv-1819-RAJ

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

**AMICUS BRIEF FOR CONSIDERATION BY THE COURT IN FASHIONING A DEFAULT JUDGMENT AWARD**

## I. RECOMMENDATIONS OF THE TASK FORCE

### A. The Department of Commerce's Report

On January 28, 2016 the Department of Commerce published its White Paper on Remixes, First Sale, and Statutory Damages (the "Task Force Paper") prepared by the Internet Policy Task Force.[1] Regarding statutory damages, the Task Force Paper notes that "concerns had been raised about the application of statutory damages against individual file-sharers who make infringing content available online." Task Force Paper at 70. The Task Force Paper notes that statutory damages awards are often "untethered from anything," and that "troubling inconsistencies in their levels can arise." *Id*. at 73. The Task Force Paper notes the troubling "litigation abuse" that has arisen due to statutory damage awards that are untethered to any actual harm. *Id*. at 74-76.

The Task Force concluded by noting that "it is important to avoid excessive and inconsistent awards that risk encouraging disrespect for copyright law or chilling investment in innovation. And the abusive enforcement campaigns reported by commenters should not be tolerated." *Id*. at 85. The Task Force proposed that Courts should consider the following nine factors when assessing statutory damages awards: (1) The plaintiff's revenues lost and the difficulty of proving damages; (2) The defendant's expenses saved, profits reaped, and other benefits from the infringement; (3) The need to deter future infringements; (4) The defendant's financial situation; (5) The value or nature of the work infringed; (6) The circumstances, duration, and scope of the infringement, including whether it was commercial in nature; (7) In cases involving infringement of multiple works, whether the total sum of damages, taking into account the number of works infringed and number of awards made, is commensurate with the overall harm

---

[1] The full white paper can be retrieved from the Department of Commerce at http://www.uspto.gov/sites/default/files/documents/copyrightwhitepaper.pdf.

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 1

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

caused by the infringement; (8) The defendant's state of mind, including whether the defendant was a willful or innocent infringer; and (9) In the case of willful infringement, whether it is appropriate to punish the defendant and if so, the amount of damages that would result in an appropriate punishment.

In addition to the foregoing factors, the Task Force also recommended "the creation of a streamlined procedure for adjudicating small claims of copyright infringement." *Id*. at 99. Undersigned counsel agrees with this, and has proposed a simple procedure at the end of this paper.

### B. The Focus Of The Factors Is On The Actual Harm Caused

The focus of the Court when awarding statutory damages, as suggested by the Task Force, should be on the actual harm caused to the Plaintiff. Indeed, factors (1), (2), (5), (6), and (7) all suggest the Court should consider first the actual harm caused by the infringement. As previously noted by this Court, the value of the work at issue in this case is roughly $20. See *Dallas Buyers Club v. Tyler Madsen, et al.*, No. 14-1153, Def. Jdg. Order at 6 (WAWD November 2, 2015). Even at the minimum statutory damages amount of $750, that award approaches 40 times the value of the actual movie at full retail price. As a compensatory number, the minimum award drastically exceeds any actual harm that could have befallen Plaintiff. And contrary to Plaintiff's assertion, $6,000 does not represent the "average statutory damages award" in similar cases. There are countless courts that award the $750 minimum. See, e.g., *Malibu Media, LLC v. Funderburg*, No. 13-2614 (ILED April 24, 2015); *Malibu Media, LLC v. Cui*, 2014 WL 5410170, at *4 (E.D. Pa. Oct. 24, 2014); *Malibu Media, LLC v. Danford*, No 14-511 (FLMD June 2, 2015); *Dallas Buyers Club v. Madsen*, No. 14-1153 (WAWD Nov. 2, 2015)(citing cases); *Call of the Wild Movie, LLC v. Smith*, No. 10-455 (DCD Sept. 9, 2011).

The deterrent effect of a statutory damages award should not be ignored. However, contrary to Plaintiff's position, the availability of up to $150,000 in statutory damages does not mean that the goal of deterrence should be totally disconnected from the value of the harm. It is worth noting that if the defaulting

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 2

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

defendant had been charged with a crime for shoplifting a copy of Plaintiff's movie, the maximum *criminal* fine would be no more than $5,000.  See RCW 9A.56.050 (theft of less than $750 is gross misdemeanor); RCW 9.92.020 (gross misdemeanor punishable by fine not to exceed $5,000).  For these reasons, a statutory damages award of $750 is adequate for cases such as this.

## II.   MERITS OF THE CASES AT BAR

When crafting a default judgment, courts often apply the factors listed in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among those factors is "*the possibility of a dispute concerning the material facts*." *Id*. (emphasis added).  In the instant case, the Court should be particularly mindful of that factor.  As detailed below, there is a *substantial* possibility that the material facts here are wrong.

### A.   The Curious Case Of Anthony Reale

The Court should be very troubled by the curious case of Anthony Reale.  In one of Plaintiff's earliest cases in this District ten "John Does" were sued. Eight were later named in a first amended complaint.  See *Dallas Buyers Club v. Does 1-10*, Case No. 14-cv-1153, at Dkt 19 (WAWD)("FAC").  Exhibits to the FAC included a table associating names with IP addresses that had allegedly been "observed" downloading Plaintiff's movie.  *Id*. at Dkt 19-1, pg. 14, 16 (hereafter "New Exhibits").  One of the individuals is Anthony Reale, associated with IP address 50.135.196.210.  Mr. Reale is alleged to have been "observed" downloading the Dallas Buyers Club movie on or about June 14, 2014.  *Id*.

The New Exhibits also included tables allegedly showing "multiple other titles [shared] on peer-to-peer networks." FAC at pg. 5, lines 4-8.  There is one new table for each named defendant.  For example, New Exhibits at pages 18-25 are associated with Tyler Madsen, and sure enough at page 22 is an entry for the Dallas Buyers Club movie allegedly downloaded by Mr. Madsen.  Likewise, New Exhibits at page 27 includes an entry that allegedly shows IP address 67.185.138.171 – associated with defendant Nataliya Moseichuk – downloading the Dallas Buyers Club movie on or about May 21, 2014.

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 3

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

The case gets interesting when one reviews the table associated with Anthony Reale (IP address 50.135.196.210). The table of alleged downloads for Mr. Reale appears on pages 30-34 of the New Exhibits. The table spans the dates from about October 31, 2013 to about August 30, 2014. Indeed, there are quite a few movies alleged to have been downloaded by Mr. Reale (or at least Mr. Reale's IP address) during that ten month period. However, conspicuously absent from the list is any indication that Mr. Reale downloaded the only movie at issue in the case: Dallas Buyers Club. In other words, there is not one single entry that indicates Mr. Reale downloaded the Dallas Buyers Club movie. To be certain, there are very many movies in the list, but the *only* movie for which Mr. Reale was sued is conspicuously absent. In other words, by Plaintiff's tacit admission, it filed suit alleging that Mr. Reale downloaded its movie with absolutely no evidence such a download occurred.

### B.     Plaintiff's IP Address Information Is Also Often Wrong

Another consideration that should trouble the Court is the frequency with which Plaintiff's IP address information is apparently wrong. In other words, the record demonstrates that Plaintiff's representations regarding the accuracy of its "observation software" is highly overstated. In one case before this Court – Case No. 14-cv-1402 (WAWD) – *half* of the ten John Does were voluntarily dismissed because either Plaintiff or the Internet service provider was unable to identify a proper subscriber for Plaintiff's accused IP address. See Case No. 14-cv-1402, Dkts 22 and 23 (WAWD)(voluntarily dismissing Does 1, 3, 4, 7, and 9). Other cases here have similar results. See, e.g., Case No. 14-cv-1336 (20% dismissed for improper information); Case No. 14-cv-1684 (20% dismissed for improper information); Case No. 14-cv-1819 (40% dismissed for improper information).

Any default judgment entered in this matter (as well as others) should reflect that Plaintiff's information is obviously highly susceptible to error. In short, either Plaintiff's or the Internet provider's information is wrong roughly 30% of the time.

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 4

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

### III. PLAINTIFF'S REQUESTED ATTORNEYS FEES

#### A. Hourly Rate

Plaintiff submits that $450 per hour is a reasonable hourly rate for its counsel, David Lowe. However, this Court has already addressed the rate submitted by Mr. Lowe in a prior, similar default judgment motion. See *Dallas Buyers Club v. Does 1-10*, Case No. 14-1153, Dkt 54 (WAWD Nov. 2, 2015). In that order, this Court found that $300 per hour for attorney time was appropriate for matters such as this. Indeed, Plaintiff's instant motion cites pages excerpted from the most recent AIPLA Economic Survey. A review of that exhibit further supports this Court's finding that $300 per hour is appropriate. More specifically, Exhibit A states that for an intellectual property firm with between 11 and 30 attorneys – as is Plaintiff's counsel's firm – the range of hourly rates is between approximately $275 and $360. Dkt 48-1 at 5. Accordingly, the hourly rate of $300 for attorney work is reasonable.

#### B. Hours Expended

Plaintiff has requested an award of attorneys fees based on "less than 7 hours total billed on this case." Dkt 47 at 7, line 20-22. It is unknown whether that number is pro-rated, but it is likely not. So when considering whether seven hours of attorney time is appropriate, the Court should consider what has in fact been prepared and filed in this and similar actions. For example, although the complaint in this matter is detailed and lengthy, it is also identical to the other thirteen complaints Plaintiff has filed in other, similar matters in this District alone. Note that the several complaints are not just similar, or just *substantially* similar. Nor are they even *strikingly* similar. They are word-for-word identical.

Plaintiff's only substantive motion filed in this matter that differs at all from previously-filed motions is its instant motion for default judgment. Dkt 47. However, although not word-for-word identical, the instant motion does bear a striking similarity to Plaintiff's earlier motion for default judgment against Tyler Madsen. See *Dallas Buyers Club v. Does 1-10*, Case No. 14-1153, Dkt 46 (WAWD).

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 5

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

The changes in the instant motion are minor and apparently intended to address some of the Court's concerns in the earlier ruling. Still, it is inconceivable that Plaintiff's counsel spent nearly 7 hours of attorney time revising the Tyler Madsen default judgment motion into what was filed in this matter.

### IV.   PROPOSAL FOR A STANDARD "DEFAULT JUDGMENT"

By way of a proposal for the Court's consideration, undersigned counsel suggests that a standard "default judgment" in matters such as this should be fashioned. A standard "default judgment" should be available not only to defendants who are in default, but also to accused infringers as a shield from Plaintiff's abusive litigation tactics. Summarily stated, upon consideration of the matters set forth above, the Court should fashion a simple "default judgment" that is available to accused infringers as an alternative to protracted litigation or harassing settlement demands. Accused infringers should be able to simply move the Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and accept the standard default judgment. This proposal addresses many of the issues and problems identified by the Task Force, and would implement the Task Force's recommendation for such a streamlined procedure. As a Rule 12(c) motion, Plaintiff would have an opportunity to oppose entry of the standard judgment by way of demonstrating (if it can) that a particular case is sufficiently dissimilar to the ordinary case that the standard judgment would be inappropriate.

Undersigned counsel recommends that an injunction combined with a $1,250 monetary award would be sufficient at the pleading stage. That award represents the statutory minimum of $750 combined with an attorneys fees award of $500, which should be adequate given the boilerplate nature of Plaintiff's complaint and other initiating documents. Obviously, such an award is likely inappropriate for any case that proceeds past the pleading stage. However, when faced with the daunting spectre of financial ruin that can result from protracted Federal litigation, an early resolution on known terms can adequately address the compensatory and deterrent requirements of a judgment while maintaining a semblance of fairness.

1  Dated: February 3, 2016       Respectfully submitted,

2

3                                  /s/ *John Whitaker*
                                  
4                                  John Whitaker
                                  WHITAKER LAW GROUP
5                                  1218 Third Avenue, Suite 1809
                                  Seattle, WA 98101
6                                  p: (206) 436-8500
7                                  f: (206) 694-2203
                                  e: *john@whitaker.law*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 7

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500

**CERTIFICATE OF SERVICE**

The undersigned attests that the foregoing document has been served on all parties of record via the Court's ECF service system on the date indicated below.

Dated: February 3, 2016            /s/ *John Whitaker*
                                                John Whitaker

*Amicus* Brief
Case No. 14-cv-1819-RAJ

Page 8

WHITAKER LAW GROUP
1218 Third Ave, Suite 1809
Seattle, WA 98101
(206) 436-8500